W. B. Groom and Mary L. Groom, Appellees, v. William Wray, Appellant.

Compromise and settlement: CONCLUSIVENESS: EVIDENCE. In this
1 action to cancel a note and mortgage, given in settlement of a claimed balance due defendant, on the grounds that the same were without consideration and induced by fraud, the evidence is held to show that the claimed settlement between the parties of previous indebtedness was not conclusive but was made in reliance upon statements of the mortgagee, and that if his computation was not correct he would make it right.

Same: AMOUNT OF INDEBTEDNESS: FRAUD: EVIDENCE. The evidence
2 is also held to support a finding that the note and mortgage were excessive because of defendant's false representations as to the amount of his claim, and that the court was justified in ordering credit thereon for the excess.

*Appeal from Pottawattamie District Court.*—Hon. W. R. Green, Judge.

FRIDAY, APRIL 5, 1912.

SUIT in equity to cancel a certain note for $1,000, and mortgage securing the same, executed by plaintiffs to the defendant. It was alleged that the note and mortgage were executed without consideration, and in reliance upon false representation made by the defendant. There was a decree for the plaintiffs granting relief to the extent of ordering a credit on said note of $839.96 as of the date thereof. The defendant appeals.—*Affirmed.*

*F. W. Miller,* for appellant.

*Tinley & Mitchell* and *W. S. Lewis,* for appellees.

EVANS, J.—This action was originally brought at law as for damages. The defendant filed an equitable defense, and, upon his motion, the cause was transferred to the equity side. Thereafter plaintiffs filed amendments to their petition, and prayed a cancellation of the note in lieu of their prayer for damages. Plaintiffs are husband and wife. The note and mortgage in controversy were executed on August 30, 1909, in purported settlement of a balance due from plaintiffs to the defendant upon previous indebtedness represented by various existing notes. According to plaintiffs' contention, the immediate circumstances attending the execution of the instruments were that the plaintiffs were about to sell at public auction their personal property upon which the defendant held a mortgage to secure his indebtedness. The date of such public sale was set for August 31, 1909. At the invitation of the plaintiffs, the defendant came to their home on the day previous, and remained there for two or three days. The place of residence of the parties is not disclosed in the record. We infer, however, from some portions of the evidence that they did not live in the same town, and perhaps not in the same county. The plaintiffs

believed that they were owing the defendant between $1,200 and $1,300, and were expecting to pay him in full out of the proceeds of the sale. The defendant, however, presented to them a computation of six notes, showing a total indebtedness of $2,371. This demand proved a surprise to the plaintiffs, and they questioned its accuracy. But the defendant assured them that he had their six notes for such amount, and could produce the same, and that, if the computation was not correct, he would make it right. Upon this condition, the plaintiffs agreed to pay out of the proceeds of the sale $1,371, and they executed the note and mortgage for $1,000 for the balance. A check for $1,371 was paid to the defendant on September 4th by W. B. Groom. At this time the defendant surrendered to such plaintiff three notes only, and stated to him that the other three were lost. The plaintiffs contend that the alleged lost notes never had any existence, and that their only existing indebtedness to the defendant was represented by the three notes which were surrendered.

According to the defendant's contention, he told the plaintiffs when he presented the computation that three of his notes had been lost or stolen, and that he would protect them against loss thereby, and that they executed the note and mortgage for $1,000 with full knowledge of such claim on his part, and that such instruments were executed by them, and received by him in full settlement of balance due to him. He also contends the truth to be that he was the owner of the six notes included in the computation, and that three of the same were lost in some manner unknown to him.

I. The first question confronting us is whether there was such a settlement between the parties that it should be deemed conclusive. We reach the conclusion that the alleged settlement was tentative and conditional and substantially in accord with the contention of the plaintiffs. It appears quite clearly that the amount claimed was much

larger than the plaintiffs believed they were owing, and
that they so expressed themselves. Plaintiffs
both testified that they asked to see the notes,
and that defendant declined to exhibit them,
but assured them that he could produce them
when they were ready to pay them. This was denied by the
defendant. It is undisputed, however, that none of the
notes were exhibited to the plaintiffs, and that the purported
settlement was based wholly upon the computation present-
ed by the defendant. This circumstance is rather corrobora-.
tive of the plaintiffs that the purported settlement was
conditional upon their future finding that the computation
was correct. Manifestly they could not determine for them-
selves the accuracy of the computation without having
access to the notes. The trial court therefore properly went
into the merits of the question as to what the extent of
plaintiff's indebtedness to the defendant was in fact at the
time of the execution of the papers.

II. Going now into the merits of the controversy,
we find the record in rather an unsatisfactory
condition. The following memorandum was
put in evidence by the defendant as pre-
senting the dates and amounts of the six notes which he
claimed to have held:

*1. COMPROMISE AND SETTLE- MENT: conclu- siveness: evi- dence.*

*2. SAME: amount of indebted- ness: fraud: evidence.*

| | | |
|---|---:|---:|
| March 23, 1907 | $ 373 | 00 |
| December 27, 1906 | 250 | 00 |
| December 31, 1906 | 654 | 00 |
| March 25, 1907 | 300 | 00 |
| May 5, 1905 | 200 | 00 |
| May 5, 1905 | 150 | 00 |
| Total | $1,927 | 00 |

This memorandum is known in the record as "Exhibit
3," and further reference will be made to it herein. The
first three notes in the above enumeration are undisputed.
The alleged lost notes are the last three in the enumeration,

viz., note for $300, dated March 25, 1907; note for $200, dated May 5, 1905; note for $150, dated May 5, 1905.

In view of the fact that these notes are conceded not to have been in defendant's possession at the time of the alleged settlement, because of their alleged loss, and in view of the claim of plaintiffs that they never executed such notes to the defendant, the mind of the judge becomes inquisitive as to the transactions out of which such alleged notes arose. The defendant has chosen to rest his case upon his own positive testimony that he had possession of the notes up to the latter part of March, 1909, and that he lost them at about such date. He was unable to testify to any detail of the transactions out of which the notes arose other than to say that they were given for borrowed money. He was unable to state any incident of place or circumstance attending the transaction of the business. He did testify that the $150 was loaned for the purpose of purchasing a horse. This was met by the testimony of the plaintiff W. B. Groom in denial, and by his affirmative testimony that he borrowed $162.50 for the purchase of a horse in 1904, and that the amount was soon thereafter repaid without any note ever having been given therefor. The two alleged notes of $150 and $200 purported to bear the same date, May 5, 1905. The alleged note of $300 purported to bear the date March 25, 1907. This date is only two days later than that of the conceded note of $373. This identity and proximity of dates was a circumstance which would tend to aid the recollection of the events, but they seem to have entirely escaped the observation of the defendant. He suggested on the witness stand that there was probably a mistake in the date of one of the notes of May 5, 1905; but this was a mere suggestion not based upon the recollection of any circumstance. As to the two notes under this date, he testified that he paid the currency as to one of them, and remitted the amount of the other. This statement was, in effect, later withdrawn. He did not profess any recollection of having made two loans

on the same day or of having taken two notes for the same loan. Nor did he profess any recollection of any circumstance in connection with the loan of March 25, 1907, for $300. No check, no draft, no memorandum, no cash account, no entry, or circumstance of any kind is offered in support of defendant's claim at this point. It is explained that he kept no books and kept no record of his notes, and that he kept no bank account. Nevertheless, he did use checks concededly to some extent. If he remitted any of this money to the plaintiffs, he must have employed some agency for such purpose. Presumably there must have been a check or a draft or a post office order or an express package. We do not think the defendant was justified in resting his case upon the mere assertion of his testimony that he had the notes. It is suggested in argument that the defendant is advanced in years and forgetful. Even this fact is not made to appear in the record. It does appear, however, that the defendant was able to testify in considerable detail as to practically all his other transactions with the plaintiffs. The defendant's evidence as to the loss of the notes is not convincing. He testified that he kept the six notes together in an envelope. He last saw them about the middle of March, 1909. He first missed these three notes out of the envelope in the latter part of March, 1909. They were kept during that period under lock and key. No one had access to them but himself. Not a circumstance was testified to tending in any degree to show how they could have disappeared.

Defendant relies for corroboration to some extent upon the memorandum (Exhibit 3), which we have above set forth. The defendant testified that he caused this memorandum to be made by his stepdaughter within the first five or six days of March, 1909. For that purpose he carried the notes to the home of his stepdaughter, and read therefrom the dates and amounts which she wrote down, and which constitute Exhibit 3. The stepdaughter also testi-

fied that she wrote down what the defendant read to her from "some writing" in his hand. She did not herself read any particular note. Why he should have carried these notes to the home of his stepdaughter for the purpose of making so simple a memorandum is not made to appear. No reason whatever was given for so doing. She would not testify to the time when this memorandum was made, nor would she testify that the defendant had the notes themselves before him. This memorandum is the only work of the kind she had ever done for him before or since. She knew nothing of his business affairs, or where he kept his papers. If the defendant could have forseen that he was about to lose the notes in question, then the making of this memorandum would have been a very natural precaution. But he does not claim to have had any prophetic knowledge on the subject. It was a most remarkable coincidence that he should have had this memorandum made by a third person just before the notes were lost. Without some explanation of a moving cause, the apparent coincidence is too great a draft upon the credulity of the court. We would not be justified upon this record in accepting the memorandum as corroborating evidence.

No useful purpose could be subserved by further discussion of the details of the evidence. It is sufficient to say that the record will not justify a finding that the defendant held these alleged lost notes in March, 1909, or at any time prior thereto. This was the conclusion of the trial court. These notes entered into the $1,000 note. They were computed with interest from date and as wholly unpaid. The trial court held that the $1,000 note was too large by the aggregate amount of said alleged lost notes as so computed, amounting to $839.96. By its decree it ordered a credit for such amount to be entered upon such $1,000 note, and allowed the defendant to hold the note as a valid obligation subject to such credit.

The decree was proper, and it is accordingly *affirmed*.